FILED
CLERK
7/3/2013 8:19 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
INTELLIGENT DIGITAL SYSTEMS, LLC,
RUSS & RUSS PC DEFINED BENFIT
PENSION PLAN, and JAY EDMOND RUSS,
all individually and as assignees of Jack Jacobs,
Robert Moe, Michael Ryan and Martin McFeely,

     Plaintiffs,

  -against-

BEAZLEY INSURANCE COMPANY, INC.,

     Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-1209 (ADS)(GRB)

**APPEARANCES:**

**David P. Rosenthal, Esq.**
*Attorney for the plaintiffs*
543 Broadway
Massapequa, NY 11758

**Ira Levine, Esq.**
*Attorney for the plaintiffs*
320 Northern Blvd.
Suite 14
Great Neck, NY 11021

**DLA Piper US LLP**
*Attorneys for the defendant*
1251 Avenue Of The Americas
New York, NY 10020
  By: Christopher M. Strongosky, Esq., Of Counsel

**SPATT, District Judge**.

  This case arises from an insurance contract dispute between the Defendant Beazley

Insurance Company, Inc. ("the Defendant") and the Plaintiffs Intelligent Digital Systems, LLC

("IDS"); Russ & Russ PC Defined Benefit Pension Plan ("the Plan"); and Jay Edmond Russ

("Russ"), all individually and as assignees of Jack Jacobs, Robert Moe, Michael Ryan and

1

Martin McFeely, (all collectively "the Plaintiffs"). The Plaintiffs seek a judgment directing the Defendant to indemnify their insureds, Jack Jacobs, Robert Moe, Michael Ryan and Martin McFeely (collectively, "the Insureds") under the Defendant's Directors, Officers and Company Liability Insurance Policy ("the D&O Policy") that was issued to Visual Management Systems, Inc. ("VMS") and its officers and directors. They also seek a judgment directing the Defendant to pay the sums owed by each of the Insureds to the Plaintiffs, arising from the action entitled <u>Intelligent Digital Systems, LLC, et al. v. Visual Management Systems, Inc. et al.</u>, E.D.N.Y. Case No. 09-CV-0974 ("the Underlying Action").

On November 27, 2012, the Court issued an Order converting the Defendant's motion to dismiss under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to a motion for summary judgment under Fed. R. Civ. P. 56 ("the Order"). The Defendant now moves for reconsideration of the Order pursuant to Local Civil Rule 6.3. For the reasons set forth below, the Court denies the Defendant's motion.

## I. BACKGROUND

The Court assumes the parties' familiarity with the background of this case and the Order that the Defendant now challenges. See <u>Intelligent Digital Sys., LLC v. Beazley Ins. Co., Inc.</u>, 906 F. Supp. 2d 80 (E.D.N.Y. 2012). Accordingly, the Court will only repeat those facts and portions of the Order relevant to the present motion.

### A. VMS's D&O Policy

On August 11, 2008, VMS submitted an application to renew the D&O Policy ("the Renewal Application"). As part of the Renewal Application, VMS completed a questionnaire in which it answered the question "since the last renewal, has the Applicant . . . had any changes in the board of directors or senior management?" in the affirmative. (Compl., Exh. A.) In its

2

Supplement to the D&O Policy Renewal Application, VMS stated that "Jay Edmond Russ was named to the company's Board of Directors." (Compl., Exh. A.) The Renewal Application was executed on behalf of VMS by Jason Gonzalez ("Gonzalez"), a member of the Board and the President and CEO of VMS.

In the Renewal Application, VMS agreed that those statements included in the Renewal Application and in the supplemental materials were "the basis of the contract should a policy be issued and have been relied upon by the insurer in issuing any policy." (Compl., Exh. A.) The Renewal Application further stipulated that "[t]his Application and materials submitted with it shall be retained on file with the Insurer and shall be deemed attached to and become part of the Policy if issued." (Compl., Exh. A.)

After receiving the Renewal Application, the Defendant renewed the D&O Policy with a policy period from September 28, 2008 until September 28, 2009. The D&O Policy provided insurance coverage to VMS and its officers and directors, including Russ. In addition to incorporating the Renewal Application and supplemental materials, the D&O Policy incorporated "any publicly available documents that are filed by [VMS] up to one year prior to the inception date of [the D&O] Policy with the Securities and Exchange Commission or for any similar federal, state, local or foreign regulatory agency[.]" (Compl., Exh. A.)

The D&O Policy defines "Insureds" to mean "the Directors and Officers and the Company." (Compl., Exh. A.) It defines "Directors and Officers" to mean, in relevant part, "all persons who were, now are, or shall be duly elected or appointed directors [.]" (Compl., Exh. A.) Under Section III.F of the D&O Policy, VMS is excluded from coverage "for Loss in connection with or resulting from any Claim . . . by, on behalf of, or at the direction of any of the

3

Insureds[.]" (Compl., Exh. A.) None of the exceptions to this exclusion apply to the present matter.

**B. The Defendant's Disclaimer of Coverage**

On February 6, 2009, the Plaintiffs (1) declared VMS's defaults under two promissory notes in writing; (2) accelerated all sums due; and (3) notified VMS, the Insureds and Gonzalez, of their claims and their imminent commencement of the Underlying Action. On that same date, February 6, 2009, VMS submitted its insurance claim to the Defendant via email. In the email, VMS identified Russ as "a former board member." (Griffin Decl., Exh. 3; see also Compl., (first) ¶ 31.)

By letter dated March 17, 2009, the Defendant responded to VMS's February 6, 2009 insurance claim. The Defendant noted that VMS's February 6, 2009 email identified Russ as a former director on the Board, which would make Russ an insured under the D&O Policy. Thus, the Defendant stated that it believed Exclusion III.F precluded coverage for Russ's claims against VMS and the other directors and officers. The Defendant requested that VMS provide it with the dates that Russ served as a director on the VMS board and for copies of the Consulting Agreement that had been entered into between VMS and Russ. On March 23, 2009, General Counsel for VMS, W. Geoffrey Martin, emailed the Defendant and notified it that "Russ was a member of our board of directors from April 3, 2008 to December 12, 2008." (Griffin Decl., Exh. 1.)

By letter dated May 27, 2009, the Defendant informed VMS that coverage was not available in connection with the Underlying Action ("the Disclaimer Letter"). The Defendant asserted that Exclusion III.F was applicable, because Russ was a director on the Board from April 2008 until he resigned in December 2008.

4

## C. The Underlying Action

On March 10, 2009, the Plaintiffs commenced the Underlying Action to recover monetary damages against VMS, the Insureds and Gonzalez by filing a Complaint in the Eastern District of New York. This Complaint was subsequently amended on March 4, 2010.

On August 30, 2010, the court (Wexler, J.) issued an order granting the Plaintiffs summary judgment against VMS in connection with its breach of its contractual obligations under the two promissory notes and the Consulting Agreement. On September 30, 2010, a Judgment was entered in favor of the Plaintiffs for the full amount due under the two promissory notes and the Consulting Agreement. This amounted to $1,833,341.65 in favor of IDS, $326,370.18 in favor of the Plan and $304,144.17 in favor of Russ, plus pre and post-judgment interest. It appears that to date, no portion of the judgment has been paid and it continues to accrue interest.

Following the entry of the Judgment, on November 8, 2010, VMS filed a petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of New Jersey. Thereafter, on November 21, 2011, the case was converted to a Chapter 7 liquidation. In addition, on or about April 8, 2011, Gonzalez filed a petition for Chapter 13 relief in the United States District Court for the District of New Jersey. (E.D.N.Y. Case No. 09-CV-974, Dkt. No. 108.) Consequently, pursuant to 11 U.S.C. § 362, the automatic stay provision, the Underlying Action is stayed as to him.

On June 2, 2011, the court (Wexler, J.) directed the Plaintiffs and the Insureds to mediate before setting a date for trial. (E.D.N.Y. Case No. 09-CV-974, Dkt. No. 90.) The mediation was scheduled for July 20, 2011. By letter dated July 7, 2011, the Plaintiffs notified the Defendant that they "rejected" the Disclaimer Letter "in its entirety" and "request[ed] that [the Defendant]

5

attend the mediation and participate in the mediation process." (Compl., Exh. E.) On July 12, 2011, the Defendant responded to the Plaintiffs' July 7, 2011 letter and stated that they would neither participate in nor attend the July 20, 2011 mediation. The Defendant also declined "to debate its coverage analysis with [the] [P]laintiffs'] counsel," except to note that "in addition to VMS' General Counsel's prior assertion that Russ was a director of VMS and the insurance application listing Mr. Russ as a director of VMS, VMS' SEC filings list [Russ] as a VMS director." (Compl., Exh. F.) On July 20, 2011, the Plaintiffs and the Insureds engaged in a full-day of mediation, but it was unsuccessful.

On September 15, 2011, the Insureds Moe, Ryan and Jacobs submitted to the Defendant a proposed Stipulation of Settlement that it had reached with the Plaintiffs for the Defendant's review and consent. By letter dated September 22, 2011, the Defendant notified Moe, Ryan and Jacobs that it was "not in a position to respond to [their] settlement consent request" because coverage was not available for the Underlying Action. (Compl., Exh. K.)

On October 6, 2011, the court (Wexler, J.) approved the Stipulation of Settlement reached between the Plaintiffs and the Insureds Moe, Ryan and Jacobs. As part of the Stipulation of Settlement, Moe, Ryan and Jacobs agreed to acknowledge their tort liability based upon their negligence in stated sums; to pay the sums owed; and to assign to the Plaintiffs their rights and claims against the Defendant. The Stipulation of Settlement required Moe, Ryan and Jacobs to only pay $70,000 collectively among the three of them, but stated settlement amounts that totaled $2.28 million. Subsequently, on November 17, 2011, the court (Wexler, J.) approved a Stipulation of Settlement reached by the Plaintiffs and Insured McFeely, who was pro se. The Stipulation of Settlement did not require McFeely to pay anything, but stated settlement amounts that totaled $2,463,756.

**D. The Instant Action and the Court's November 27, 2012 Order**

On March 12, 2012, the Plaintiffs, individually and as assignees of the Insureds, commenced the instant action against the Defendant by filing the Complaint in the United States District Court for the Eastern District of New York. As a result of the Stipulations of Settlement, which assigned the Insureds' alleged insurance coverage rights to the Plaintiffs, they seek insurance coverage for those claims which they asserted against the Insureds in the Underlying Action.

On May 11, 2012, the Defendant moved to dismiss the Plaintiffs' Complaint for failure to state a claim. Relevant here, the Defendant argued that the Plaintiffs' claims were barred by equitable estoppel, in that VMS represented on behalf of itself and the Insureds that Russ was a director and the Defendant relied upon these misrepresentations to its detriment. The Plaintiffs countered that the Defendant could not invoke the doctrine of equitable estoppel because its reliance on VMS's representations concerning Russ's status as a director on the Board was unreasonable.

On November 27, 2012, the Court issued the Order, in which it converted the Defendant's motion to dismiss to a motion for summary judgment. See Intelligent Digital Sys., 906 F. Supp. 2d at 90. Among other findings, the Court held that triable issues of fact existed with respect to one of the elements of the Defendant's defense of equitable estoppel. See id. at 94–96. Therefore, the Court declined to grant summary judgment in favor of the Defendant. See id.

In this regard, the Court first noted that "[u]nder New York law, equitable estoppel requires a showing of (1) [a]n act constituting a concealment of facts or a false misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual

or constructive knowledge of the true facts by the wrongdoers; (4) [r]eliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." Id. at 94–95 (quoting General Elec. Capital Corp. v. Eva Armadora, S.A., 37 F.3d 41, 45 (2d Cir. 1994)). The Court then concluded that there was no factual dispute as to the first three elements in that (1) VMS had misrepresented that Russ a director on VMS's Board and, thus, an insured; (2) VMS had an expectation that the acts of misrepresentation would be relied upon by the Defendant and (3) VMS would have had actual or constructive knowledge of the true facts because it would have been aware of whether or not Russ had been duly appointed or elected to the Board and, as a result, whether or not he was an insured under the D&O policy. See id. at 95.

However, the Court determined that there were "triable issues of fact . . . with respect to the fourth element of the equitable estoppel doctrine" and "whether the Defendant was justified or reasonable in relying on VMS's and Russ's representations that Russ was a director on the Board." Id. at 95–96. The Court explained:

> Specifically, a question remains as to whether the Defendant, as a sophisticated insurer, failed to properly investigate VMS's representations that Russ was a Director, particularly in that it failed to seek additional corporate documents from VMS verifying that Russ was duly appointed or elected. See, e.g., Idearc Media LLC v. Siegel, Kelleher & Kahn LLP, 09–CV–1090S, 2012 WL 162563, at *5, 2012 U.S. Dist. LEXIS 5687, at *15 (W.D.N.Y. Jan. 16, 2012) (holding in a fraudulent inducement case that "[w]hether or not a party's reliance on a representation was justifiable is typically a question of fact, one that requires consideration of 'the level of sophistication of the parties, the relationship between them, and the information available' at the time of the operative decision'") (citing JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004)); Ogunsanya v. Langmuir, 08–CV–940 (JG), 2008 WL 4426590, at *4, 2008 U.S. Dist. LEXIS 74376, at *13 (E.D.N.Y. Sept. 26, 2008) (same); JP Morgan Chase Bank, 350 F. Supp. 2d at 406 (holding in a

> fraudulent misrepresentation case that "sophisticated business
> entities are held to a higher standard").

Id. at 96. On December 11, 2012, the Defendant moved for reconsideration of this Order.

## II. DISCUSSION

### A. Legal Standard

A motion for reconsideration in the Eastern District of New York is governed by Local Rule 6.3. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

Of importance, a motion for reconsideration is not an opportunity for litigants to reargue their previous positions or present new or alternative theories that they failed to set forth in connection with the underlying motion. See Trans—Pro Logistic Inc. v. Coby Elecs. Corp., No. 05 Civ. 1759, 2010 U.S. Dist. LEXIS 109902, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010) (citing Ferrand v. Credit Lyonnais, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2003)); see also Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."). Indeed, a motion for reconsideration should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have already been considered fully by the court" and is considered an "extraordinary remedy to be

9

employed sparingly in the interests of finality and conservation of scarce judicial resources." Trans—Pro Logistic Inc., 2010 U.S. Dist. LEXIS 109902, 2010 WL 4065603, at *1 (internal quotation marks omitted). Ultimately, the decision as to whether to grant a motion for reconsideration rests within the sound discretion of the district court. Kapsis v. Bloom, No. 08 Civ. 3092, 2009 U.S. Dist. LEXIS 13367, 2009 WL 414001, at *1 (E.D.N.Y. Feb. 17, 2009).

**B.  As to the Plaintiff's Motion to Reconsider the Court's November 27, 2012 Order**

In its present motion, the Defendant challenges this finding by the Court and claims that the Court "misapprehended New York law as it applies to insurers when it suggested that [the Defendant] failed to properly investigate VMS's acknowledged representations that Russ was a director of VMS." (Def. Mem., pg. 3.) According to the Defendant, the Court "overlook[ed] New York law holding that an insurer is not required to verify or investigate factual information provided by its insured" and therefore "impose[d] upon [the Defendant] an obligation never before recognized under New York law and impose[d] upon insurance companies an obligation to investigate facts presented to an insurer that does not reflect applicable New York law." (Def. Mem., pg. 3–4, emphasis in original.) However, the Court finds that the Defendant has failed to show that it is entitled to reconsideration.

In this regard, the cases to which the Defendant cites in support of its motion for reconsideration arise in contexts that meaningfully differ from the one that was present before the Court. For example, Fleet Messenger Service, Inc. v. Life Ins. Co. of N. Am., 315 F.2d 593, 598 (2d Cir. 1963), John Hancock Life Ins. Co. v. Perchikov, 553 F. Supp. 2d 229 (E.D.N.Y. 2008); Colin v. Hamilton Fire Ins. Co., 251 N.Y. 312 (1929); Cherkes v. Postal Life Ins. Co., 285 A.D. 514 (N.Y.S. App. Div. 1st Dep't 1955), aff'd without opinion, 309 N.Y. 964 (1956); and Falcon Crest Diamonds, Inc. v. Dixon, 655 N.Y.S.2d 232, 238 (Sup. Co. N.Y. Co. 1996)

10

were all cases that involved arguments that the insurance policy was void ab initio, on the basis that the insured made material misrepresentations to the insurer. In other words, the issue in these cases "[was] whether the [insurance] company had been induced to accept an application which it might otherwise have refused." Falcon Crest Diamonds, 655 N.Y.S.2d at 236 (citing Aguilar v. United States Life Ins. Co. In the City of New York, 162 A.D.2d 209, 210–11 (N.Y.S. App. Div. 1st Dep't 1990)). As the First Department of the New York State Appellate Division explained:

> To demonstrate materiality as a matter of law, an insurer need only show that the misrepresentation substantially thwarts the purpose for which the information is demanded and induces action which the insurance company might otherwise not have taken. The question in such case is not whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company had been induced to accept an application which it might otherwise have refused.

Aguilar, 162 A.D.2d at 210–11 (quoting (Geer v. Union Mutual Life Insurance Company, 273 N.Y. 261, 271, 7 N.E.2d 125 (1937)) (internal quotation marks omitted).

Applying this framework, it is true that the courts in these cases found that "[a]n insurer is not required to verify or investigate information provided by an insured[.]" John Hancock, 553 F. Supp. 2d at 239 (quoting Chicago Ins. Co. v. Kreitzer & Vogelman, 265 F. Supp. 2d 335, 344 (S.D.N.Y. 2003)); see also Fleet Messenger Serv., 315 F.2d 593, 598 (2d Cir. 1963) (quoting Cherekes, 285 A.D. at 516) ("'Defendant's negligence in not making further inquiry may be conceded, but that is not the equivalent of knowledge, nor does it cancel out or counteract the insured's fraud.'"); Falcon Crest Diamonds, 655 N.Y.S.2d at 238 (holding that where there "no evidence" that the insured's "representations were incorrect" that the insurer "had no reason to make further inquiry"). However, nothing in the Court's November 27, 2012 Order disturbed this precedent. This is because the Defendant never argued that VMS's representation that Russ

11

was a director, assuming it was false, rendered the D&O Policy void ab initio. Nor did any of the evidence before the Court suggest that such a representation, if false, was material, because the Defendant failed to show that knowledge of the facts allegedly misrepresented would have led it to refuse renewing the D&O policy with VMS and the Insureds. See Am. Gen. Life Ins. Co. v. Bolden, 10 CIV.712 LTS GWG, 2011 WL 3278910, at *3 (S.D.N.Y. July 27, 2011) (quoting N.Y. Ins. Law § 3105(b)) ("A misrepresentation is material if the insurer can show that 'knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.'"). In any event, even if the Defendant had raised such an argument, "[d]etermining whether a misrepresentation is material is usually a jury question," although a court may "decide it as a matter of law 'where the evidence is clear and substantially uncontradicted.'" Lavinger v. Principal Mut. Life Ins. Co., 98 CIV. 0664 (TPG), 2000 WL 124990, at *3 (S.D.N.Y. Feb. 2, 2000) (quoting Aguilar, 556 N.Y.S.2d at 585).

Instead, the Defendant argued a defense of equitable estoppel in its motion to dismiss, an argument which it maintains here. Unlike the void, ab initio defense, which only requires that an "insurer [ ] show that it was induced to accept an application that it might otherwise have refused," In re WorldCom, Inc. Securities Litigation, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005), equitable estoppel requires that the party invoking it establish, among other elements, "that its detrimental reliance [on the misrepresentation] was reasonable under the circumstances," Levine v. Greece Cent. Sch. Dist., 353 F. App'x 461, 464 (2d Cir. 2009) (citing Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 447 (2d Cir. 2006)). In this regard, it specifically requires that "[t]he party asserting estoppel [ ] show with respect to itself [ ] lack of knowledge and of the means of knowledge of the true facts[.]" Leser v. U.S. Bank Nat. Ass'n, 09-CV-2362 KAM MDG, 2012 WL 4472025, at *17 (E.D.N.Y. Sept. 25, 2012) (citing In re Vebeliunas, 332 F.3d

85, 94 (2d Cir. 2003) (in turn, citing Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 594 (2d Cir. 1996))). Therefore, the Court's determination that triable issues of fact remained as to whether the Defendant was justified or reasonable in relying on the representations that Russ was a director of the Board did not, as the Defendant contends, create any new obligations on insurance companies beyond that which would be required of any party invoking the defense of equitable estoppel.

The other decision the Defendant relies on is Chicago Ins. Co., which also stated that "[a] insurer is not required to verify or investigate information provided by an insured." 265 F. Supp. 2d at 344. However, this holding was reached in a case where the defendants were asserting an affirmative defense of waiver, not equitable estoppel. Id. at 343. "Under New York law, '[t]o establish waiver, it is necessary to show that there has been an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.'" Coggins v. Cnty. of Nassau, 615 F. Supp. 2d 11, 29 (E.D.N.Y. 2009) (quoting Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp., 76 A.D.2d 68, 81 (N.Y.S. App. Div. 4th Dep't 1980)). Of importance,

> [t]he doctrines of waiver and estoppel are closely akin, but there are some important distinctions. "[A] waiver is a voluntary and intentional abandonment or relinquishment of a known right, whereas an equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish or change any existing right . . . . Among other distinctions, waiver involves the act and conduct of only one of the parties . . . ."

Id. at 30 (citing 28 Am. Jur. 2d Estoppel and Waiver § 36). Furthermore, relevant here, the waiver defense, like the void ab initio defense, does not share with equitable estoppel the requirement that the party invoking it demonstrate that its detrimental reliance was reasonable. In addition, the Court notes that neither on this motion nor on its previous motion did the

Defendant argue or proffer evidence suggesting "a clear manifestation of intent" on the part of VMS or the Insureds to voluntarily and intentionally relinquish a known right with respect to coverage under the D&O Policy. Chicago Ins. Co., 264 F. Supp. 2d at 343 (citing K. Bell Assocs., Inc. v. Lloyd's Underwriters, 827 F. Supp. 985 (S.D.N.Y. 1993)).

The Defendant also attempts to undercut the Court's reliance on the decisions in Idearc Media LLC v. Siegal, Kelleher & Kahn LLP, 2012 WL 162563, at *1 (S.D.N.Y. Jan. 18, 2012); Ogunsanya v. Langumuir, 2008 WL 4426590, at *4 (E.D.N.Y. Sept. 26, 2008); and JP Morgan Chase Bank v. Winnick, 350 F. Supp. 393, 406 (S.D.N.Y. 2004). The Court acknowledges that the factual scenarios in those cases differed from that of the instant action. However, the Court relied on these cases not because they shared similar fact patterns with the present case. Rather, the Court cited to these cases primarily for the legal principle that in general "'[q]uestions of the reasonableness of reliance raise issues of fact that must be resolved at trial.'" Ogunsanya, 2008 WL 4426590, at *5 (quoting MTV Networks v. Curry, 867 F. Supp. 202, 207 (S.D.N.Y.1996)). The Court found this principle applicable in the equitable estoppel context. Indeed, as the Court emphasized in the Order, courts have found that the doctrine of equitable estoppel, which includes issues concerning whether the reliance was reasonable, raises questions of fact not suitable for resolution at the summary judgment stage. See, e.g., Dunlop-McCullen v. Pascarella, 97CIV.0195(PKL)(DFE), 2002 WL 31521012, at *15 (S.D.N.Y. Nov. 13, 2002) (citing Amrep Corp. v. American Home Assurance Co., 81 A.D.2d 325, 328 (N.Y.S. App. Div. 1st Dep't 1981)) ("Estoppel is usually a question of fact inappropriate for summary judgment."); Schneider v. Canal Ins. Co., 98-CV-5368(JG), 1999 WL 689476, at *13 (E.D.N.Y. Sept. 1, 1999), aff'd, 210 F.3d 355 (2d Cir. 2000) (quoting Bennett v. United States Lines, Inc., 64 F.3d

14

62, 65 (2d Cir.1994)) ("The Second Circuit has also noted that '[w]hether equitable estoppel applies presents an issue of fact.'").

Further, the Court viewed these cases as helpful for understanding the kinds of considerations that would need to be weighed by a fact-finder before determining the reasonableness of the Defendant's reliance. Particularly in light of the fact that equitable estoppel is generally invoked in insurance cases by the insured not the insurer, see, e.g., Schneider v. Canal Insurance Co., 210 F.3d 355, 355 (2d Cir. 2000); North American Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 499 F. Supp. 2d 361, 375–76 (S.D.N.Y. 2007); Albert J. Schiff Associates, Inc. v. Flack, 51 N.Y.2d 692, 699, 435 N.Y.S.2d 972, 975 (1980), the Court concludes that it was appropriate to look to cases outside of the equitable estoppel context for the purposes of guidance as to the element of reasonable reliance.

Accordingly, based on the foregoing, the Defendant's motion for reconsideration of the November 27, 2012 Order is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Defendant's motion for reconsideration of the November 27, 2012 Order is denied.

**SO ORDERED.**
Dated: Central Islip, New York
July 3, 2013

             ____/s/ Arthur D. Spatt_____
              ARTHUR D. SPATT
             United States District Judge