**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
INTELLIGENT DIGITAL SYSTEMS, LLC,
RUSS & RUSS PC DEFINED BENEFIT
PENSION PLAN, JAY EDMOND RUSS, **MEMORANDUM OF**
all individually and as assignees of Jack Jacobs, **DECISION & ORDER**
Robert Moe, Michael Ryan and Martin McFeely, 12-CV-1209 (ADS) (GRB)
and Jason Gonzalez,
      Plaintiffs,

   -against-

BEAZLEY INSURANCE COMPANY, INC.,
      Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Paul A. Batista, P.C.**
*Attorney for the Plaintiffs*
26 Broadway
New York, NY 10004

**Ira Levine, Esq.**
*Attorney for the Plaintiffs*
320 Northern Blvd, Suite 14
Great Neck, NY 11021

**DLA Piper US LLP**
*Attorneys for the Defendant*
1251 Avenue Of The Americas
New York, NY 10020
  By: Christopher M. Strongosky, Esq.
    Neal F Kronley, Esq., Of Counsel

**SPATT, District Judge**.

  Presently before the Court is a motion by the Defendant Beazley Insurance Company,

Inc. (the "Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 50 for judgment as a

matter of law ("JMOL").

  For the reasons set forth below, the Defendant's motion is denied.

# I. BACKGROUND

## A. The Relevant Facts

Familiarity with facts and procedural history of this case is presumed. However, the Court briefly reviews the facts relevant to the Defendant's present motion.

Under the terms of the Directors and Officers and Company Liability Insurance Policy (the "Policy"), the Defendant agreed to provide insurance coverage to the directors and officers of Visual Management Systems, Inc. ("VMS") for "all **Loss** which is not indemnified by [VMS] resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act**[.]" (See Pre-trial Order, Dkt. No. 107, at p. 10) (emphasis in original). The Policy, in turn, defines "Loss" as:

> [T]he amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, costs and fees awarded pursuant to judgments, settlement amounts and **Costs, Charges, and Expenses**, incurred by any of the **Insureds,** but shall not include:
>
> 1. punitive or exemplary damages . . . ;
>
> 2. that portion of any multiplied damages award which exceeds the amount multiplied;
>
> 3. matters deemed uninsurable under the law pursuant to which this Policy shall be construed;
>
> 4. any reimbursement required pursuant to Section 304 of the Sarbanes Oxley Act of 2002, . . . ;
>
> 5. any investigation costs . . . ;
>
> 6  taxes or the loss of tax benefits; and
>
> 7. any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by the **Company** in connection with its purchase of any securities or assets.

(Id.; see also Kronley Decl., Dkt. No. 82–2, Ex. 3) (emphasis in original).

In the present case, the Plaintiffs Intelligent Systems, LLC ("IDS"); Russ & Russ PC Defined Benefit Pension Plan (the "Plan"); and Jay Edmond Russ ("Russ") (collectively the "Plaintiffs") seek coverage under the Policy as assignees of Jack Jacobs ("Jacobs"), Robert Moe ("Moe"), Michael Ryan ("Ryan"), Martin McFeely ("McFeely"), and Jason Gonzalez ("Gonzalez"), who were all former directors of VMS.

Specifically, the Plaintiffs sued Jacobs, Moe, Ryan, McFeely, and Gonzalez (collectively, the "Individual Insureds") in an underlying action before Untied States District Judge Leonard D. Wexler for negligence, common law fraud, securities fraud, and non-payment of promissory notes (the "Underlying Action"). (See the June 23, 2015 Order, Dkt. No. 101, at 15–16.) Judge Wexler so-ordered three separate stipulations settling the claims by Russ and IDS against the Individual Insureds. Under those stipulations, the Individual Insureds consented to judgments against them individually. (June 23, 2015 Order, Dkt. No. 101, at 17–18; see also Trial Exs. 8, 10, 13.) However, the Plaintiffs agreed to "unconditionally forbear" the collection of the judgments against the Individual Insureds in exchange for which the Individual Insureds agreed to, among other things, assign to the Plaintiffs their claims for indemnification under the Policy for costs and expenses incurred in the Underlying Action. (See id.; see also Pre-Trial Order, Dkt. No. 101, at p.14, ¶¶ 37–42.). Notably, each of the stipulations made clear that, "Nothing contained in the Stipulation shall constitute a waiver or release of the Plaintiffs' . . . right to assert any claim or rights of against [the Defendant]." (See Kronley Decl., Dkt. No. 82–7, Ex. 39 at ¶ 8; Ex. 42 at ¶ 8; Ex. 45 at ¶ 8; see also Trial Exs. 8, 10, 13.)

**B. The Present Motion**

Because it undisputed that the Plaintiffs agreed not to collect the judgments against the Individual Insureds, the Defendant argues that the Individual Insureds never suffered a "Loss"

3

within the meaning of the Policy and therefore, they are not entitled to coverage under the Policy for the Underlying Action. (See the Def.'s Mem. of Law at 2–3.) Thus, they contend that the Plaintiffs are not entitled to coverage under the Policy as assignees of the Individual Insureds' rights under the Policy. (Id.)

The Plaintiffs contend that the Individual Insureds never agreed to release the Defendant from liability under the Policy, and therefore, the judgments against them do constitute a "Loss" under the Policy, irrespective of whether the Plaintiffs agreed to forebear collection of those judgments. (See the Pl.'s Mem. of Law at 1–5.) As explained below, the Court agrees.

## II. DISCUSSION

Under Rule 50(a)(1), "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

> In ruling on a motion for JMOL, the trial court is required to consider:
>
> the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.

Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001) (quoting Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 367 (2d Cir. 1988)). In making this evaluation, the court must "review all of the evidence in the record, . . . but must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to

4

the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (internal quotation marks, citations and alterations omitted).

The Court notes that the parties appear to assume in their legal memoranda that New York law applies to the interpretation of the Policy and therefore, the Court will apply New York law solely for the purpose of interpreting the Policy here. See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) ("'The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.'") (quoting Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 514 n. 4 (2d Cir. 2001)).

Under New York law, "'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting Village of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995)). "[T]he insured bears the burden of showing that an insurance coverage covers the loss, but the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim," and "[d]oubts are resolved in favor of the insured." MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011) (citation omitted).

As noted, the Defendant contends in the present motion that as a matter of law, the judgments entered against the Individual Insureds in the Underlying Action do not constitute covered "Loss[es]" under the Policy because the Plaintiffs agreed to forebear collection of those judgments from the Individual Insureds' personal assets. (See the Pl.'s Mem. of Law at 2.) The Court disagrees.

As noted earlier, the Policy defines Loss as, "[T]he amounts which the Insureds become legally obligated to pay on account of a Claim, including damages, judgments, any award of pre-judgment or post-judgment interest, costs and fees awarded pursuant to judgments, settlement amounts and Costs, Charges, and Expenses, incurred by any of the Insureds[.]" (See Pre-trial Order, Dkt. No. 107, at p. 10).

The question presented in this case is whether the Individual Insureds were "legally obligated to pay" the settlement amounts and judgments against the Individual Insureds in the Underlying Action even though the Plaintiffs agreed to forebear collection on the portions of the unpaid judgments from the Individual Insureds personally.

Although there does not appear to be binding New York authority on the issue, the Plaintiffs point to a few New York cases that have interpreted the phrase, "legally obligated to pay," in insurance policies to cover consent judgments that assign the rights of the insured to a third party, so long as the assignment does not release the insurance company from liability. See, e.g., Home Depot U.S.A., Inc. v. Nat'l Fire & Marine Ins. Co., 55 A.D.3d 671, 673–74, 866 N.Y.S.2d 255 (2d. Dep't 2008) ("Since 'an insurer's obligation to indemnify extends only to those damages the insured is legally obligated to pay, it naturally follows that a release discharging an insured from all liability relieves the insurer from the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty to indemnify may be based' . . . . Nonetheless, the assignment agreement did not constitute a release of Westward's liability in the underlying personal injury action."); Westchester Fire Ins. Co. v. Utica First Ins. Co., 40 A.D.3d 978, 980–81, 839 N.Y.S.2d 91 (2d. Dep't 2007) ("Kirkham acknowledged his liability in the underlying personal injury action by agreeing to settle Danna's third-party action against him in an amount up to $300,000, and indemnify Danna for the

6

settlement amount in the underlying personal injury action or $300,000, whichever was less. <u>It is of no moment that Danna agreed never to execute against Kirkham for this settlement amount</u>. This narrow restraint was not tantamount to a release of Kirkham's liability in the underlying personal injury action. Moreover, where, as here, '<u>the policy is a contract for protection against liability, the insured may turn to [the insurer] for relief as soon as his liability has become legally fixed and established, although he has not suffered actual loss</u>.'") (emphasis added) (quoting <u>M & M Elec., Inc. v. Commercial Union Ins. Co.</u>, 241 A.D.2d 58, 61, 670 N.Y.S.2d 909 (1998)).

The Court has identified cases in other jurisdictions that have also recognized the right of assignees, such as the Plaintiffs, to pursue coverage on behalf of insureds even when the assignment is coupled with a covenant not to execute judgment against the insureds. See <u>First Mercury Ins. Co. v. Markowitz</u>, No. 2:12-CV-06527 (WHW), 2013 WL 4430831, at *4 (D.N.J. Aug. 14, 2013) ("Both New Jersey and New York law allow for consent judgments that assign an insured's interests against an insurer to a third party."); <u>Genesis Ins. Co. v. Crowley</u>, 495 F. Supp. 2d 1110, 1120 (D. Colo. 2007) ("As a matter of pure contract interpretation, the matter should be decided in favor of Trustee. The scope of the term, 'legally obligated to pay' is not defined and is arguably ambiguous, and, as such would have to be construed in favor of the insured. <u>I agree with those courts that have considered similar language and concluded that where, as here, a covenant not to execute is not accompanied by a release of liability, amounts awarded under a consent judgment remain a legal obligation</u>.") (emphasis added) (collection cases); <u>In re Feature Realty Litig.</u>, 634 F. Supp. 2d 1163, 1168 (E.D. Wash. 2007) ("The vast majority of Courts follow the rule that the insured remains 'legally obligated to pay' because a covenant not to execute coupled with an assignment and settlement agreement is a contract and 'not a release permitting the insurer to escape its obligation.'") (quoting <u>Kagele v. Aetna Life &</u>

7

Cas. Co., 40 Wash. App. 194, 198, 698 P.2d 90 (Wash. 1985); Aks v. Southgate Trust Co., 844 F. Supp. 650, 657 (D. Kan. 1994) ("[T]he existence of a covenant not to execute and an assignment of claims should not permit an insurer to escape its obligations under an insurance agreement . . . . Thus, the court finds that Federal cannot avoid liability simply because Southgate assigned its rights under the policy to plaintiffs in this action."); Gray v. Grain Dealers Mut. Ins. Co., 871 F.2d 1128, 1132–33 (D.C. Cir. 1989) ("That brings us to question whether or not the assignment and release were self-contradicting . . . . We note somewhat ruefully that there are no cases in the District squarely on point. However, many other jurisdictions have considered similar transactions and the majority of them have allowed the transfer.").

Thus, based on the cases discussed above, it appears that New York courts and a majority of courts in other jurisdictions have held that an insurance company remains "legally obligated" to pay a claim under a policy even where, as here, the claim was assigned to a third party, and the third party agreed not to execute a judgment against the insured's personal assets.

That is precisely what happened in this case. The Individual Insureds agreed to consent judgments on the Plaintiffs' claims in the underlying action, which they were legally obligated to pay. As part of those judgments, the Insureds assigned their rights to coverage under the Policy to the Plaintiffs in exchange for a covenant not to enforce the unpaid portions of those judgments against the Insureds personally. The settlement stipulations made clear that "nothing contained in th[e] Stipulation[s] shall constitute a waiver or release of Plaintiffs' . . . right to assert claim or rights of actions against [the Defendant]." Without such a waiver, this Court follows the majority of other courts that have confronted a similar issue and holds that the term "legally obligated to pay" encompasses the consent judgments against the Individual Insureds, irrespective of the covenants not to enforce those judgments. Thus, the Court finds that the

Individual Insureds did suffer a "Loss" under the Policy, and the Plaintiffs, standing in the shoes of them, are entitled to seek coverage under the Policy for those judgments, barring proof of another exclusion.

The Court is not persuaded by the cases cited by the Defendant. In U.S. Bank Nat. Ass'n v. Fed. Ins. Co., 664 F.3d 693 (8th Cir. 2011), a company in bankruptcy assigned its claims against a former director to a trust for the benefit of the company's creditors. Id. at 695. As part of the transfer, the creditors agreed not to pursue a judgment against the director personally, but instead to seek judgment solely against an insurance company that provided coverage to the director under a D&O Policy. Id. at 695–96. The trust sued then sue the director and agreed to a $56 million settlement in exchange for which it agreed not to pursue a judgment against the director directly. Id. at 696. The trust subsequently brought a declaratory judgment suit against the insurance company seeking coverage for the settlement amount under the D&O policy. Id. at 696–97. The district court granted a motion to dismiss the claims under the policy because, among other things, it found that the settlement agreement in the underlying action absolved the director from liability, and therefore, there could be no "Loss" under the Policy. Id. at 697–698.

On appeal in U.S. Bank National Association, the Eight Circuit agreed. Id. The policy at issue defined "Loss" as "the total amount any Insured Person becomes legally obligated to pay on account of each Claim and for all Clams . . . for Wrongful Acts." Id. However, the definition of loss excluded "any amount not indemnified by the Insured Organization for which the Insured Person is absolved from payment by reason of any covenant, agreement or court order." Id. The Court of Appeals reasoned that "[i]n accordance with the most natural reading of this plain policy language, and in the context of the policy as a whole, we believe it is clear that [the director] is 'absolved from payment' by the Assignment Agreement." Id. at 698. Accordingly, it

9

found that the $56 million judgment was not a "Loss" within the meaning of the Policy, and the trust was not entitled to coverage as an assignee of the director. See id. at 700.

However, in this case, "Loss" is defined as the "amounts to which the Insureds become legally obligated to pay on account of a Claim, including judgments . . . , settlement amounts and Costs, Charges and Expenses incurred by any of the Insureds." (See Pre-trial Order, Dkt. No. 107, at p. 10). The Policy goes on to list a number of categories of damages, such as punitive damages and multiple damage awards, which are specifically excluded from the definition of "Loss." (See id.) Notably, there is no exception "for amounts . . . for which the Insured Person is absolved from payment," as was the case in U.S. Bank National Association. Had the Defendant wished to include such an exception it easily could have. The fact that it did not do so suggests that there was no such exception for non-recourse judgments, as the Defendant contends. See MeehanCombs Glob. Credit Opportunities Funds, LP v. Caesars Entm't Corp., 80 F. Supp. 3d 507, 518 n.62 (S.D.N.Y. 2015) ("'[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission. The maxim *expressio unius est exclusio alterius,* as used in the interpretation of contracts, supports precisely this conclusion.'") (quoting parenthetically Quadrant Structured Prod. Co. v. Vertin, 23 N.Y.3d 549, 560, 16 N.E.3d 1165, 1172 (N.Y. 2014)). Thus, the Court finds U.S. Bank National Association to be readily distinguishable from the instant case.

Defendant also relies on Jones v. S. Marine & Aviation Underwriters, Inc., 888 F.2d 358, 359 (5th Cir. 1989). There, the insured agreed to a judgment in an underlying personal injury action, in exchange for which the plaintiffs agreed not to attach a lien to the insured's personal assets and instead to pursue their claims against the insurance company. Id. at 361. The policy

10

covered all sums to which the insured "shall by law be liable to pay." Id. at 359. The court interpreted this language to establish a condition precedent that the insured be personally liable for coverage to apply. Id. at 361. Because the insured was not personally liable under the agreed judgment, the court found that plaintiffs were not entitled to pursue coverage under the policy to satisfy the judgment. Id.

The Court acknowledges that Jones is more on point. Here, the Policy defines "'Loss' as the "amounts to which the Insureds become legally obligated to pay." That language is similar to the operative language in Jones. Further, like the consent judgment entered into by the insured in Jones, the consent judgments and stipulations that the Individual Insureds entered into in the Underlying Action also absolved the Individual Insureds from any personal liability for the unpaid portions of those judgments. However, Jones is not binding on this Court and appears to represent a minority view. Therefore, the Court declines to follow it.

For the foregoing reasons, the Court finds that, as a matter of law, the Plaintiffs have made a *prima facie* case that the consent judgments against the Individual Insureds in the Underlying Action are covered "Loss[es]" under the Policy. Accordingly, the Defendant's motion for a JMOL is denied on this ground. In addition, the Court will not charge the jury on the issue of "Loss." Rather, the charge will be focused on the two issues remaining in this case as set forth in the Court's Summary Judgment Order, namely, (i) whether Russ was "duly elected or appointed" to the VMS Board of Directors, and thus, exempt from indemnification under the "insured versus insured" exclusion; and (ii) with respect to the Defendant's equitable estoppel defense, whether the Defendant justifiably relied on the representations made by VMS and Russ regarding his apparent appointment.

**SO ORDERED.**
Dated: Central Islip, New York
September 16, 2016

                                                 _/s/ Arthur D. Spatt_
                                                 ARTHUR D. SPATT
                                           United States District Judge